UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
VANDEGRIFT FORWARDING CO.,

        Plaintiff,

— against —

HARTFORD FIRE INSURANCE CO. &
JAMES GORMAN INSURANCE, INC.,

        Defendants.
------------------------------------------------------------X

**MEMORANDUM and ORDER**

06-CV-5440 (SLT)(JMA)

**TOWNES, United States District Judge:**

  Vandegrift Forwarding Company ("Vandegrift") is a freight forwarder and customs broker that acts on behalf of shippers to facilitate the successful importation of commercial goods into the United States. This action concerns customs bonds obtained by Vandegrift from Hartford Fire Insurance Company ("Hartford") on behalf of twenty-six shippers. The bonds were issued by James Gorman Insurance, Inc. ("Gorman"), as attorney in fact for Hartford. Following a change in customs law that rendered the bonds ineffectual, Vandegrift brought this diversity action, 28 U.S.C. § 1332, against Hartford and Gorman seeking repayment of premiums and a declaratory judgment regarding premiums that have not yet been paid. The defendants move to dismiss on the grounds that Vandegrift cannot establish diversity jurisdiction, lacks Article III standing, and is not a real party in interest under Federal Rule of Civil Procedure 17(a).

## BACKGROUND

  When a United States producer files an anti-dumping petition, the International Trade Administration undertakes an investigation and initiates a process that could result in the imposition of anti-dumping duties. Under the Uruguay Round Agreements Act, Pub. L. No.

103-465, 108 Stat. 4809 (1994), "new shippers" — exporters or producers that did not export a particular good during the investigation period — may obtain an individual dumping margin and antidumping duty rate. 19 U.S.C. § 1675(a)(2)(B)(i); 19 C.F.R. § 351.214(a). Until recently, the shippers were permitted to post a bond instead of a cash deposit during the pendency of the new shipper review to cover potential anti-dumping duties. 19 U.S.C. § 1675(a)(2)(B)(iii); 19 C.F.R. § 351.214(e).

Pursuant to a broad power of attorney granted by the shippers, Vandegrift executed on behalf of the shippers a series of customs bonds underwritten by Hartford. In exchange for premium payments, Hartford agreed to serve as surety for any anti-dumping duties owed by the shippers. On August 17, 2006, however, Congress enacted the Pension Protection Act of 2006, Pub. L. No. 109-280, 120 Stat. 780, which suspended new shippers' option of posting a bond for the period from April 1, 2006, until June 30, 2009. 19 U.S.C. § 1675 note. The new legislation was retroactive and covered a period for which the shippers had already purchased bonds. According to Vandegrift, its clients paid premiums totaling $839,548 for bonds that were rendered ineffective by the new legislation (Compl. ¶ 10) and owe more than $1,000,000 in premiums for the bonds (Compl. ¶ 11). On behalf of the shippers, Vandegrift now seeks repayment of the premiums and a declaratory judgment regarding the premiums that have not yet been paid. The defendants move to dismiss.

**STANDARD OF REVIEW**

Challenges to Article III standing and diversity jurisdiction are properly brought under Rule 12(b)(1). *See Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006) (Article III standing). "When jurisdiction is challenged, the plaintiff 'bears

the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists,' and the district court may examine evidence outside of the pleadings to make this determination." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (citations omitted) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Id.* (quoting *Potter*, 343 F.3d at 623) (internal quotation marks omitted).

A real-party-in-interest defense can be raised through a motion to dismiss under Rule 12(b)(6). *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992); 6A Wright, Miller & Kane, Federal Practice and Procedure § 1554 (2008); *see also Tagare v. NYNEX Network Sys. Co.*, 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996). When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true the factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) (quoting *Karedes v. Ackerley Group, Inc.*, 423 F.3d 107, 113 (2d Cir. 2005)). A plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (2007). The Court employs a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007). When materials outside of the pleadings are presented to the Court, the motion should be treated as a motion for summary judgment. Fed. R. Civ. P. 12(d). Conversion to a motion for summary judgment is not required, however, when the complaint

relies on the extraneous documents and the documents are integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 1991).

## DISCUSSION

The discussion is divided in two parts. First, Vandegrift lacks Article III standing because it has not established an injury in fact. Second, Vandegrift is not a real party in interest under Rule 17(a). In light of Vandegrift's failure to establish Article III standing, this Court need not reach the question whether Vandegrift has established diversity jurisdiction.

### A. *Vandegrift Lacks Article III Standing Because It Has Not Established an Injury in Fact.*

Standing under Article III of the Constitution consists of three elements: "(1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008) (emphases omitted) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "These requirements ensure that a plaintiff has a sufficiently personal stake in the outcome of the suit so that the parties are adverse." *Id.* at 107 (citing *Baker v. Carr*, 369 U.S. 186, 204 (1962)). "As a general rule, the 'injury-in-fact' requirement means that a plaintiff must have personally suffered an injury." *Id.* (citing *Lujan*, 504 U.S. at 560 n.1; *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982); *Baker*, 369 U.S. at 204).

Vandegrift has not alleged a concrete injury sufficient to plead an injury in fact. The shippers, not Vandegrift, were the parties harmed by the defendants' failure to return the

4

premium payments. Vandegrift has not been assigned any interest in the claim for the return of premium payments, and Vandegrift concedes that it is bound to transmit any repayment to the shippers. (Pl. Memo. at 6). Likewise, Vandegrift has not alleged an injury in fact stemming from the defendants' attempts to collect premiums that have not yet been paid. In its complaint, Vandegrift alleges that any attempt to collect such premiums from the shippers "will interfere with Vandegrift's business relationships and runs the risk that Vandegrift will suffer injury and damage in its relationships with its customers." (Compl. at ¶ 27). Vandegrift elaborates that "[t]he damage Vandegrift will suffer, because of the nature of its business, would be very difficult, if not impossible to quantify." (Compl. at ¶ 28). This allegation is insufficient because an injury in fact must be "concrete and particularized . . . and [ ] actual or imminent, not conjectural or hypothetical." *Coal. of Watershed Towns v. EPA*, 552 F.3d 216, 217 (2d Cir. 2008) (omission and alteration in original) (quoting *Lujan*, 504 U.S. at 560) (internal quotation marks omitted). Vandegrift does not give any suggestion how its business relationships would be harmed. It is highly speculative that Vandegrift would be blamed for defendants' collection efforts, given that Vandegrift obtained the bonds at a time when their use was explicitly authorized by federal law. Vandegrift's allegations are conjectural, insufficiently concrete, and vague. *See Friends of Hamilton Grange v. Salazar*, 2009 WL 650262, *14 (S.D.N.Y. Mar. 12, 2009) (vague allegations insufficient); *Jones v. Stancik*, 2004 WL 2287779, *5 (E.D.N.Y. Oct. 4, 2004) (same).

Vandegrift advances several unpersuasive arguments in favor of Article III standing. First, Vandegrift argues that its status as attorney in fact for the shippers enables it to bring this action in its own name. Even assuming, however, that Vandegrift's power of attorney

5

contemplates the capacity to bring a judicial action,[1] the power of attorney does not confer Article III standing. "[A] mere power-of-attorney — i.e., an instrument that authorizes the grantee to act as an agent or an attorney-in-fact for the grantor — does not confer standing to sue in the holder's own right because a power-of-attorney does not transfer an ownership interest in the claim." *W.R. Huff*, 49 F.3d at 108 (citation omitted). Vandegrift does not allege an ownership interest in the claims brought on behalf of the shippers.

Second, Vandegrift argues that it has standing because it is a de facto trade association representing the interests of the shippers. For the purposes of Article III standing, an association "must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit." *Warth v. Seldin*, 422 U.S. 490, 511 (1975) (citing *Sierra Club v. Morton*, 405 U.S. 727, 734–41 (1972)). Vandegrift's argument fails, however, because Vandegrift is not a de facto trade association. The decision of the Supreme Court in *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977), is instructive. In *Hunt*, the Washington State Apple Advertising Commission brought an action challenging a North Carolina state statute that it considered detrimental to the interests of Washington apple growers. *Id.* at 335–38. The Supreme Court held that the Commission had standing even though the apple growers and dealers were not members of the Commission, as would normally be the case with a traditional trade association. *Id.* at 344–45. The Commission nonetheless performed the functions of a trade association by representing the interests of the Washington apple industry.

---

[1] The grants of power of attorney by the shippers do not expressly authorize Vandegrift to bring lawsuits on the shippers' behalf.

*Id.* In addition, the apple growers and dealers elected the members of the Commission, were the only parties eligible to serve on the Commission, and financed the Commission's activities. *Id.* In contrast, Vandegrift is a private enterprise hired by the shippers to serve as their agent and attorney in fact for the purpose of importing goods into the United States. Vandegrift does not represent the interests of the shippers generally. Moreover, the shippers exert no control over Vandegrift beyond the scope of the principal-agent relationship and do not finance Vandegrift beyond fees for services provided.

Third, Vandegrift argues that it qualifies as a trustee by virtue of its control over the premium payments of the shippers. Trustees have standing to bring suits to benefit their trusts. *W.R. Huff*, 549 F.3d at 109–10 (quoting *Sprint Commc'ns Co. v. APCC Servs, Inc.*, 128 S. Ct. 2531, 2543 (2008)). Vandegrift, however, was an agent of the shippers rather than a trustee. An agency differs from a trust in multiple respects. Unlike a trustee, "[a]n agent as such does not acquire title to the property of the principal, although the agent may have powers with respect to some or all of that property." Restatement (Third) of Trusts § 5 cmt. e (2003); *see also Clark v. Chase Nat'l Bank*, 45 F. Supp. 820, 822 (S.D.N.Y. 1942) (citing *Bullard v. City of Cisco, Tex.*, 290 U.S. 179 (1933); *Kokusai Kisen Kabushiki Kaisha v. Argos Mercantile Corp.*, 280 F. 700 (2d Cir. 1922); *Schenectady Trust Co. v. Emmons*, 25 N.Y.S.2d 230 (App. Div.), *aff'd*, 36 N.E.2d 461 (N.Y. 1941); Restatement (First) of Trusts § 8 (1935)); 6A Wright, Miller & Kane, *supra*, § 1548; 2A C.J.S. Agency § 23 (2008) ("The essential distinction between a trust and an agency results from the fact that in a trust the title and control of the property under the trust instrument passes to the trustee, who acts in his or her own name, while the agent represents and acts for his or her principal . . . ."). Additionally, unlike a trustee, "[a]n agent undertakes to act

7

on behalf of the principal and subject to the latter's control." Restatement (Third) of Trusts § 5. Finally, "[a]n agency may be terminated at the will of either the principal or the agent, but a trust is ordinarily not terminable at the will of either the trustee or the beneficiaries, or by the death or incapacity of either." *Id.* Although Vandegrift exercised discretion regarding the use of the premium money, Vandegrift did not acquire ownership of the funds. Vandegrift acted at all times on behalf of the shippers and subject to their control, and the authority of Vandegrift was revocable at any time by the shippers.

### B. *Vandegrift Is Not a Real Party in Interest Under Rule 17(a).*

Federal Rule of Civil Procedure 17(a) requires that actions in federal court be brought by the real party in interest:

> An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought:
> (A) an executor;
> (B) an administrator;
> (C) a guardian;
> (D) a bailee;
> (E) a trustee of an express trust;
> (F) a party with whom or in whose name a contract has been made for another's benefit; and
> (G) a party authorized by statute.

Fed. R. Civ. P. 17(a)(1).

"[W]hile the question of in whose name a suit must be brought is procedural," and thus governed by federal law, "that question must be answered with reference to substantive state law."[2] *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van*

---

[2] Although the federal, rather than state, real-party-in-interest rule applies, 6A Wright, Miller & Kane, *supra*, § 1544; *see also Stichting*, 407 F.3d at 48–49 & n.7, Rule 17(a) and New York's real-party-in-interest rule are similar. The New York Civil Practice Law and Rules

8

*Saybolt International B.V. v. Schreiber*, 407 F.3d 34, 48 (2d Cir. 2005) (emphases omitted). Rule 17(a) "assumes that the applicable substantive law gives the persons named in the rule the right to sue." 6A Wright, Miller & Kane, *supra*, § 1543; *see also Stichting*, 407 F.3d at 48–49 & n.7. Conversely, "anyone possessing the right to enforce a particular claim is the real party in interest even if that party is not expressly identified in the rule." 6A Wright, Miller & Kane, *supra*, § 1543.

Vandegrift is not a real party in interest under Rule 17(a). First, Vandegrift is not the trustee of an express trust. Fed. R. Civ. P. 17(a)(1)(E). As explained above, Vandegrift was merely an agent of the shippers. Vandegrift did not acquire ownership of the premium payments, the authority of Vandegrift was revocable at any time, and Vandegrift acted at all times on behalf of the shippers and subject to their control. Second, Vandegrift is not "a party with whom or in whose name a contract has been made for another's benefit." Fed. R. Civ. P. 17(a)(1)(F). Because Vandegrift signed the customs bonds as attorney in fact for the shippers, the customs bonds were not executed with or in the name of Vandegrift, but rather were executed in the name of the shippers. *See U.S. Epperson Underwriting Co. v. Jessup*, 22 F.R.D. 336, 341–42 (M.D. Ga. 1958); 6A Wright, Miller & Kane, *supra*, § 1549.

Consistent with Rule 17(a), New York law also does not grant Vandegrift a right of action. First, Vandegrift's power of attorney does not authorize it to maintain this action in its own name. Even assuming *arguendo* that Vandegrift's power of attorney contemplates the institution of a judicial action, New York law is clear that a power of attorney, without an

---

("C.P.L.R.") defines as real parties in interest, among others, the "trustee of an express trust" and a "person with whom or in whose name a contract has been made for the benefit of another." N.Y. C.P.L.R. 1004.

9

assignment, does not authorize the attorney in fact to bring an action in his own name. *Clark v. Chase Nat'l Bank*, 45 F. Supp. 820 (S.D.N.Y. 1942) (citing *Titus v. Wallick*, 306 U.S. 282, 289 (1939); *Spencer v. Standard C. & M. Corp.*, 143 N.E. 651 (N.Y. 1924); *Meyer v. Lowry & Co.*, 12 N.Y.S.2d 177, 179 (App. Div. 1939)).

Second, Vandegrift's acquisition of the customs bonds as agent of the shippers does not authorize it to maintain an action in its own name. "An agent who makes a contract on behalf of a principal cannot maintain an action thereon in his own name on behalf of the principal although authorized by the principal to bring suit, unless the agent is a promisee or transferee." Restatement (Second) of Agency § 363 (1958); *see also Frank B. Hall & Co., Inc. v. Rushmore Ins. Co.*, 92 F.R.D. 743, 746 (S.D.N.Y. 1981) (citing *Meridian Trading Corp. v. Nat'l Auto. & Cas. Ins. Co.*, 258 N.Y.S.2d 16, 18 (Sup. Ct. 1964); *Application of Eimco Corp.*, 163 N.Y.S.2d 273 (Sup. Ct. 1957)); *Colonial Sec., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 461 F. Supp. 1159, 1165 (S.D.N.Y. 1978); Restatement (Third) of Agency § 6.01 cmt. e (2008). An agent also may maintain an action in its own name if it acquires an interest in the contract. *Colonial Sec., Inc.*, 461 F. Supp. at 1165; Restatement (Second) of Agency § 372. Vandegrift, however, does not allege that it is a promisee and alleges no interest in the premium payments.

Third, the broad scope of Vandegrift's agency does not authorize it to maintain this action in its own name. *Watts v. Phillips-Jones Corp.*, 207 N.Y.S. 493 (App. Div. 1925), has been cited for the proposition that an agent may bring an action in its own name "when the defendant has acknowledged that the plaintiff possesses a general agency authorizing him to act in all matters." 3 Weinstein, Korn & Miller, New York Civil Practice ¶ 1004.12 (2009). In *Watts*, an agent was permitted to bring an action against a mill for failing to accept cloth that the

10

agent had sold on behalf of its principal. 207 N.Y.S. at 494. The court explained that "the plaintiffs were recognized by the defendant either as the real party in interest, or as possessing such a general agency as authorized them to act in all matters affecting the contract for and on behalf of the mill, and even to bring and maintain an action in their own name for the benefit of the mill." *Id.* at 498. *Watts*, however, is distinguishable. Unlike Vandegrift, the agent in *Watts* executed the contract in its own name. *Id.* at 495. In addition, the agent in *Watts* engaged in a far more extensive course of dealing with the defendant. The agent and the mill exchanged hundreds of letters, some of which discussed the possibility of arbitration and price correction, which suggested that the mill recognized the agent as possessing authority beyond that of an ordinary agent. *Id.* at 496.

When an action is prosecuted by a party other than the real party in interest, the court generally is required to provide a reasonable amount of time for the plaintiff to cure the defect:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or substitution, the action proceeds as if it had been originally commenced by the real party in interest.

Fed. R. Civ. P. 17(a)(3). A district court "retains some discretion to dismiss an action where there was no semblance of any reasonable basis for the naming of the incorrect party." *Wiwa v. Royal Dutch Petroleum Co.*, 2009 WL 464946, *10 (S.D.N.Y. Feb. 25, 2009) (quoting *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997)) (internal quotation marks omitted). "Courts should grant leave to join the real parties in interest if (1) the defect in the named plaintiffs plausibly resulted from mistake ('mistake' prong), and (2) correcting this defect would not unfairly prejudice defendants by changing the particulars of the claims against

11

them ('prejudice' prong)."[3] *Id.* (citing *Advanced Magnetics*, 106 F.3d at 20–21). Because Vandegrift lacks Article III standing, as explained above, it is not necessary to determine whether Vandegrift's lack of standing under Rule 17(a) warrants dismissal.[4] It is similarly unnecessary to determine whether there exists complete diversity of citizenship pursuant to 28 U.S.C. § 1332. *See generally Airlines Reporting Corp. v. S&N Travel, Inc.*, 58 F.3d 857, 861–62 (2d Cir. 1995) (holding that, when a party sues in a representative capacity, the citizenship of the represented entities controls for diversity purposes).

## CONCLUSION

For the foregoing reasons, the motions to dismiss the complaint under Rule 12(b)(1) is **granted**. The Clerk of Court is directed to close this case.

                S/
                SANDRA L. TOWNES
                United States District Judge

Dated: Brooklyn, New York
March 31, 2009

---

[3] Ratification is likely not available here, as it would expand substantive rights granted by state law. The procedural mechanisms of Rule 17(a) may not be employed to accomplish what could not be accomplished under New York law. *Stichting*, 407 F.3d at 49.

[4] It is worth noting that, according to Vandegrift's figures, only six out of twenty-six shippers have met the $75,000 amount-in-controversy requirement. (Pl. Ex. F). This, perhaps, explains why Vandegrift has attempted to bring the action in its own name. In its memorandum of law, Vandegrift notes that "any one of the bondholders may not be capable of a lawsuit or may, alone, lack an incentive to prosecute the matter." (Pl. Memo. at 8).